Caporicci v. Chipotle Mexican Grill. Caporicci v. Chipotle Mexican Grill. Good morning, may it please the court, Gabrielle Klepper here on behalf of the appellant Lisa Caporicci. A major issue in the case at hand is an employment disability discrimination appeal and the fact is that there exists a genuine issue, a material fact, which includes summary judgment as to whether or not the appellant's termination is based on her disability. The policy at issue and discussed in the district court's decision was not in fact facially neutral as it was determined. It was not followed by Chipotle and it was not violated by the appellant. The record evidence supports this finding and therefore supports the appellant's claim that the reason proffered for her termination was in fact discriminatory and pretextual. Just to be clear, just to make my outline straight, you're not proceeding under any sort of theory that she was treated differently than some comparator, just that she didn't violate the policy? Correct. Was that argument raised a lot? That she didn't violate the policy? Yes, it was. As an argument, not as a passing reference in a factual statement, but as an argument. There was a detailed explanation as to how she followed the policy, the steps that she took as far as notifying Chipotle of her disability and of the medications that she was taking. In addition to the fact that she followed the policy, did you say to the district court and therefore we proved our prima facie case in the McDonnell case? Yes, I believe so based on the statement that she was terminated based on a discriminatory purpose on the 7th in 2013. I don't want you to have to rifle through your district court papers now, but do you know off the top of your head where that argument was specifically made to the district court? As best I could find, there was a citation in the statement of facts of the summary judgment response that followed the guidelines provided by Chipotle in the company's handbook, but I just didn't see that it was ever a legal argument, that it was ever tied to a theory. Yes, that's the main outline as far as the theory of the claim was outlined in the statement of facts, and then it was reiterated when we stated the reasons for her termination, very much for the failure to accommodate, which is an issue here, and that her termination was discriminatory. I don't recall where they were listed in our response to the motion for summary judgment, but I do believe that they were also specifically notated in my reply brief. Okay. Well, I can check it, but you agree with me, I guess, that our precedent's pretty clear that mentioning something in the statement of facts is not sufficient to preserve an argument for appellate review. I feel that it's argued throughout. The main argument or the main statement in detail is in the statement of facts, but it is argued throughout the response motion itself that she did not violate the policy, and the issue with the policy or the district court's review of the policy is the fact that they  When Chipotle was drafting their drug use policy, they saw fit to make it a two-part policy, to have one part, which refers to illicit or illegal drugs, and to have a secondary portion, a carve-out or a caveat, for individuals who are taking prescribed medications, essentially creating a caveat for people with disabilities to notify the employer that they're taking medication, which therefore notifies the employer of a possible disability and allows them to essentially create an exception if that individual does commit misconduct based on their medication to allow them to continue their employment. That portion of the policy was not focused on in the lower court. They kept reiterating the first part, despite the fact that we all agree that the issue at hand is that Ms. Capparici was taking prescription medication, a new prescription medication, on the day that she was terminated. There was no allegation at the time of her termination by her manager that she was taking illegal or illicit drugs, as they believe the appellee mentioned. You would put that burden on the employer to make that determination? I believe that the employer put it on themselves by making the policy two-fold. If the policy in existence was simply that first portion, which states no employee shall report to work or be under the influence of alcohol, drugs, or controlled substances, then this would be a different conversation. They saw fit to make a caveat and state, however, if an employee is taking prescription drugs, they need to notify management that they're on those drugs and may have side effects. I understand your failure to accommodate claim. What accommodation are you saying should have been made for Ms. Capparici? Again, based on that policy, the second portion of the policy, the appellee created their own burden to begin the interactive process with an employee. The accommodation would have been? For her, it would have been either she needed to change her shifts, possibly, because the she needed to start later in the afternoon if she was starting to take her medication in the morning, or if she needed additional leave time because she was just going through the titration of her medicine and just started taking medication. Where did you set out those requested accommodations? She did not make the request for accommodations. The employer created their own burden. I understand. You know more about this area of the law than I do, but I understand when you're making a failure to accommodate claim, you have to say, this is the accommodation that should have been made. Where in your pleadings do you say, this is the accommodation that should have been made? I'm not making a failure to accommodate claim, but I'm stating that it's part of the policy. I just want to be very clear on this point. You are not making a failure to accommodate claim. That's not what's before us today. Do I have that right? Okay. Let me ask the question this way. Assume for the purpose of my question that you've established a prima facie case of disability discrimination. We then go to the next steps of the McDonnell-Douglas analysis, and the next step is whether or not there is an ultimate non-discriminatory reason for the termination. Not a heavy burden under the case law, and if indeed they have met that burden, the ultimate burden of persuasion and going forward merges at that stage, and you've got to show in substance that the reason offered by the employer was pretextual. No dispute about that analysis, right? Right. Okay. Is there any dispute about whether Chipotle had offered a legitimate non-discriminatory reason to it that she was intoxicated at work? You don't dispute that there was a legitimate non-discriminatory reason offered, do you? I do. Okay. Could you tell me why a claim of intoxication wouldn't be enough to establish the burden that they have? We've said, quote, the burden is exceedingly light. The defendant need not persuade the court that it was actually motivated by the profit reasons. It is sufficient, the Supreme Court of the United States says in Burdine, it is sufficient if the defendant's evidence raises a genuine issue as to whether it was discriminated against the plaintiff. Why wouldn't there have been a basis for the district court to conclude that they had offered a non-discriminatory reason? Maybe it was the real reason, maybe it wasn't, but on its face, the reason of intoxication was a legitimate non-discriminatory reason. I'm having trouble at that point. I thought the heart of your argument is even assuming that were the case, we've shown that that reason really was pretextual. That is- See, that's where I would have assumed you'd fight your battle rather than on the second prong because it seems to me almost undeniable that intoxication at work, which is proffered as a reason, is a legitimate non-discriminatory reason. What am I missing here? That she wasn't terminated for intoxication, she was terminated for being under the influence of a prescription medication and showing up to work taking your legally prescribed medications is not intoxication. I do agree that the main part of my argument and the obviously strongest part of the argument is that if the court determined that Chipotle's presented reason was a legitimate non-discriminatory reason, we succeed under the final portion of the burden shifting argument in that she didn't violate the policy, which can clearly be proven by the record. Therefore, that proves pretext under Damon v. Fleming. Is that right? I would have thought that for pretext, you would have to show some sort of subjective state of mind. If the employer had made a reasonable mistake about whether she violated the policy or not, then there might not be a case. Under Damon v. Fleming Supermarkets, it says that when an employer relies on violation of a work rule, as is the case here, a plaintiff may show pretext by submitting evidence demonstrating that she did not violate the cited work rule. I think by proving that she notified the employer of her disability and taking medication in prior to starting work that day. Hold on one sec. That case also says, and you can tell me if I'm misreading it or you're misreading it, that same case says that an employer who fires, this is a quote, fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. If it was a mistaken and honest misunderstanding, but based on the manager's own statement, he knew she was under the influence of medication. He did not say that she was fired for illicit drugs, which is what the argument is trying to be presented now. He said on a number of occasions, including in the only written record we have since he's gone AWOL, an email from him that states she was under the influence of medication does not state she was under the influence of any illegal or illicit drugs. And also he confirmed or it's confirmed on the record that, I believe it was in the appellee's actual motion for summary judgment, that they confirm Ms. Caparici notified her manager, Mr. Mazzel, that she was taking medication and that she was notifying him of her taking of the medication due to the fact that it may have an impact on her work. Thank you, counsel. And you've reserved three minutes for rebuttal. May it please the court. My name is Christina Wright, and I and my colleague, Kendra Beckwith, represent Chipotle Mexican Grill. I would like to briefly respond to some of the things opposing counsel just brought up. First, the argument that Chipotle's drug policy is not facially neutral, that's an entirely new argument. It certainly wasn't raised in the district court. I don't believe it was raised here on appeal. I don't believe it's preserved at all. I think the district court correctly noted that this is a disparate treatment case, if anything, and not a disparate impact case regarding Chipotle's policy. Can you, while you're talking about preservation, can you help me, I could be way off the reservation here, but is the . . . was there ever an argument made in the district court that summary judgment was inappropriate because there had been compliance with the rule? I'm sorry, that . . . That Capparicci had complied with Chipotle's work rule, hadn't violated the rule. No. It's been my impression from reading this that that was never really teed up as an argument to the district court, but I could be wrong about that. I agree with Your Honor that it was not made in response to the motion for summary judgment. Really, in any form, I think there's approximately two paragraphs worth of response to our legitimate non-discriminatory reason for her termination and pretext. I don't think any of it involved what opposing counsel has referred to as the second paragraph of the policy. I believe that the plaintiff did not follow the guidelines in the second paragraph of the policy, but the reason she was terminated is because she violated Chipotle's policy, which prohibits employees from reporting to work or being at work under the influence of drugs, controlled substances, or alcohol. Can I talk to you about that? I think that's an interesting thing about this case, putting aside what's been argued about the case. For me, it seems like to me there is a generally applicable neutral employment rule. You don't come to work intoxicated. It also seems to me that Ms. Caparici tried to follow the rules. She disclosed, I've got this health problem, I'm taking medication, and even to the detail of I'm having to change medication. It seemed to me she tried to do the right thing. The question that seems interesting to me is what happens when a neutral, generally applicable employment rule affects somebody with a disability in a way that does cause disparate treatment? That seems to me what we may have here, whether or not it was raised. What's your thought about that? Certainly. I'd like to respond probably twofold. First, I don't believe that the plaintiff tried to follow Chipotle's policy or give Mr. Meisel or anyone at Chipotle a heads up about what she claims were adverse effects of her medication. She had a conversation with Mr. Meisel in April where she told him that she had bipolar disorder. That's undisputed. During that conversation, the plaintiff testified that she did not tell Mr. Meisel about any medications that she was taking for bipolar disorder, that those medications could have any effect on her at work, that bipolar medications in general could have an adverse effect on anybody. For the record, that testimony is at Appendix Volume 2, page 213. Okay. Then he gave her time off when she changed her medication. Certainly. Then Mr. Meisel ... Which is where the problem came from, right? Well, Mr. Meisel received a letter, a doctor's note, indicating that the plaintiff was going to start taking Safras and that she needed a few days off to adjust. Even the doctor's note says, after having these few days off to adjust, I expect that the plaintiff will be fine. It doesn't say anything about side effects from the medication. Maybe you can help me with the framework. Assume, just as a matter of law, where a neutral, generally applicable employment rule has a bad effect on somebody because they are disabled. Is that a violation of the Americans with Disabilities Act? I believe that ... I agree with the district court when it noted that the majority opinion is that an employer is not required to excuse misconduct just because it might arise from a disability. I believe that that's consistent with the objectives of the ADA. Was that a ... No, it's not a violation? No, it's not a violation. Okay. Do we have to answer that question? It strikes me that that's a real hard question and a close question. If we assume arguendo that there was a prima facie case made and we assume further that you've offered a legitimate non-discriminatory reason, that is intoxication, in the workplace at the time, then the whole case boils down to whether or not she has sufficiently disgorged information that suggests pretext. Yes. Tell me about pretext. So, in this case, or in any case, the plaintiff could have established pretext by offering evidence that her termination was motivated by discriminatory animus or that the reason was false. In this case, specifically, the plaintiff failed on both counts and there is no evidence that her termination was motivated by anything other than her violation of the employee's policy. She admitted to coming to work dizzy, disoriented, incoherent, unable to perform her job, admitted that she should have been sent home, admitted that if an employee comes to work intoxicated, that's an appropriate reason to terminate them. There is no evidence that the reason proffered for her termination was false and, in fact, the plaintiff has admitted several times that the reason Mr. Meisel gave, that he believed that she was intoxicated, at one point he used the word inebriated, under the impression that she was under the influence of drugs. All of those reasons were the actual reason. There is no pretext for disability discrimination. I hope that answers the pretext question. I would like to just briefly address the court's initial finding. There was no prima facie showing here in this case because, having failed to even make a prima facie showing, this court can affirm the district court on that basis alone. I would note on the district court, at appendix volume three, page 43, found that the plaintiff did not dispute her violation of the policy and, indeed, she testified that she took the medication before coming to work and that the medication, when she was at work, was quote, messing her up and then admitted shortly after her termination in what Chipotle calls respectable workplace complaints, that she was under the influence of a prescription drug while she was at work. Of course, as we've noted earlier, there were no comparators who received more favorable treatment. Do I have it straight that the only way in a case like this that she can make out the prima facie case is to show either treated different from comparators or didn't violate the rule you accused me of violating? I believe when a termination is based on violation of a work rule, that that is a way for the plaintiff to meet the prima facie. This is what I'm struggling with very publicly, I guess, is I'm trying to figure out this is clearly not a comparator case. If the argument now is I showed a prima facie case because I didn't violate the rule I'm accused of violating, was that an argument that was made to the district court? Going a step further, she did violate it. She's admitted to violating it. Even if you would like to consider her argument now, it fails. Unless there are any more questions from the court. I think I'm having a motherly moment. It just seems like there was poor communication all the way around. Chipotle had an employee they liked. They were watching her for management. She didn't handle her end of it perfectly. This has nothing to do with the legal arguments being made, but just in terms of how we're all spending our time on this. Then on the other end, if a little bit, I mean on your end, your client's end, if a little bit of attention had been paid to what was going on with her and try to help draw out from her what was going on, maybe this employment relationship could have been saved and maybe that would have been good for everybody. Certainly, and I understand that. To that, I'd like to take many steps back and just remind, I guess I have to remind myself as well in these cases, the plaintiff was an at-will employee. Oh, I don't know. I understand the legal arguments. I guess that's where I'd fall on that. Unfortunate, maybe so. Really, Chipotle is limited. It can fire its employees for any reason, no reason, horrible reason. Except for that they have a disability. As long as it is not discriminatory. In this case, it was not. Thank you. Ms. Klepper, you've reserved three minutes. Let me ask you a question. If we were to go to the prima facie question, rather than assume that you met your burden on that issue, the courts are split on the question of whether termination based on conduct related to or caused by a disability constitutes the unlawful discrimination. Majority position seems to be that an employer may discipline or terminate an employee for workplace misconduct even when the misconduct is a result of or related to the employee's disability. The Fourth Circuit said it. The Fifth Circuit said it. The Sixth Circuit said it. The Seventh Circuit said it. And we noted our approval in an unpublished opinion saying the same thing. NOVA we said in JAM versus NOVA Southeastern University, NOVA we wrote is not required to excuse past misconduct even if that misconduct is linked to a student's mental disability. Citing to Halpern, which was the Fourth Circuit case on that matter. Why is that wrong and why is the better position, the position taken by the Tenth and Second Circuit? And they take clearly a different position. The Ninth Circuit has kind of a different twist on it. Why is it I'm right that that's essentially a minority position? And if we were to address it, why should we not align ourselves with the views of the Fourth, Fifth, Sixth, Seventh Circuit on that issue? The reason that it should be found that disability-related misconduct is in fact a disability in and of itself is specifically due to a case like this one where someone is doing everything that they are supposed to do related to caring for themselves and trying to handle their disability and being a good citizen in society. So holding someone accountable for the fact that, especially with a mental illness, that they've gone against the stigma, they've notified their employer, they've sought psychiatric treatment, they're taking drugs to make themselves level, and we're going to hold that against you. It just goes against the grain. Although, what do you do with a case like the one that came out of the Sixth Circuit? In that case, the case I'm referring to is Broome v. Props. And in the case, the plaintiff was an anesthesiologist who had sleep apnea, and he was dismissed for sleeping during a surgical procedure. There was no question that there was a connection between the disability and the underlying discipline or termination of the case, and yet the Sixth Circuit ruled the way it did for all of the obvious reasons. Did the Sixth Circuit get that one wrong? I believe the difference in the cases is that the individual in Broome did not notify the employer of his disability prior to being disciplined for falling asleep in the workplace. So, that's the distinction here, is that they're aware of the disability, they're aware of the medication, and obviously, as we all know, all medications cause sleep apnea. Then there was one that came out of the Seventh Circuit, Despairs v. Milwaukee City. In that one, a maintenance worker who suffered from alcoholism and whose job required driving was dismissed for losing his driver's license after driving under the influence. And again, they took essentially the same position stated in sort of a high order of generality, notwithstanding the connection. They said that wouldn't be enough to meet the prima facie obligation. In a majority of the cases that have held the majority position, deal with the individual, the disability at issue in that case is someone who's addicted to illegal substances. I think that there needs to be a distinction made for those. It's still a disability. I'm not disagreeing with that, but there needs to be a distinction made for someone who's doing something illegal and someone who is doing something that is legal. So, my client didn't do anything illegal in the workplace. She took her prescriptions as prescribed, notified the employer. Although, of course, the anesthesiologist wasn't doing anything illegal. He just had a serious malady, sleep apnea. And it caused him to fall asleep. And in the operating room, with no surprise, the hospital said, thank you, you're terminated. And I'm sure if he had given prior notice that he had this disability prior to him falling asleep in surgery, the employer may have required him to have an IME and get treatment and medication. So, that's the distinction. I understand. Thank you very much. Thank you both for your efforts. We will be in recess until 9 a.m. tomorrow morning.